## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No.  20- 106 (RC)** |
| | : | |
| **LIRIM SYLEJMANI,** | : | |
| **also known as** | : | |
| **Abu Sulayman al-Kosovi,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Lirim Sylejmani under 18 U.S.C. §§ 3142(f)(1)(A) and 3142(f)(2)(A). The defendant is charged with a crime of violence and an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a sentence of at least 10 years is prescribed, giving rise to a presumption that no condition or combination of conditions can reasonably assure either the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3)(C).  As set forth in this Memorandum, the government seeks the defendant's continued detention pending trial in this matter because he is a danger to the community and, under the facts of this case, he cannot overcome that presumption.

## APPLICABLE LAW

There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community. The offenses of conspiracy to provide material support or resources to a designated foreign terrorist organization, providing or attempting to provide material support or resources to a designated foreign terrorist organization, and receiving military-type training from a foreign terrorist organization are among

1

those listed in 18 U.S.C. § 2332b(g)(5)(B), pursuant to 18 U.S.C. § 3142(e)(3)(C). A rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community, provided that the judicial officer finds that there is probable cause to believe that the defendant has committed the charged offense, which has the possibility of a sentence of at least 10 years of incarceration, and which is one of the offenses listed in 18 U.S.C. § 2332b(g)(5)(B). Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence. *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather, the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008), quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). *See also United States v. Ali*, 793 F. Supp.2d 386, 391 (D.D.C. 2011) (presumption, even when subject to rebuttal evidence, "is given substantial weight"); *United States v. Bess*, 678 F.Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."). A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995). For a detention decision based upon a defendant's dangerousness, the government must prove by clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community. *See* 18 U.S.C. § 3142(f); *United States v.*

*Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As set forth more fully below, these factors weigh in favor here of detaining the defendant.

## FACTUAL BACKGROUND

The Islamic State of Iraq and al- Sham, known as ISIS, is a designated foreign terrorist organization. Specifically, in 2004, the United States Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act (the "INA") and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224. In 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under Section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added a number of aliases to the FTO, including ISIS. To date, ISIS remains a designated FTO

and knowingly providing material support to ISIS is a federal crime.

In 2015, the defendant, Lirim Sylejmani, a naturalized American citizen living in Kosovo, decided to travel with his family to Syria to join ISIS.  He registered with the terrorist organization, completed ISIS training, and engaged in at least one battle against United States Coalition Forces. After years of living under ISIS rule, the defendant was captured by the Syrian Democratic Forces (SDF).  While in prison, the defendant spoke with multiple news outlets, and with Federal Bureau of Investigation (FBI) agents about his experience with ISIS.  Specifically, on April 21, 2019, FBI agents interviewed the defendant at an SDF prison, where, after he waived his *Miranda* rights, the defendant spoke about his journey to join ISIS, his training and experiences in the Islamic State. Specifically, he explained that while in Kosovo in 2015, he learned more about ISIS and decided to travel with his wife and children to Turkey and then Syria to join the organization.  To complete this process, he worked with an active ISIS member to receive Tazkiyah, or official vouching, and was connected with a smuggler who helped his family enter Syria and connect with the ISIS organization.  Notably, during this process, the defendant admitted to giving up his, and his family's United States' passports, thereby abandoning their passports to live under the rule of the Islamic State.

Once in Syria, the defendant told the FBI that he took an official ISIS name, Abu Sulayman al-Kosovi, and entered ISIS training.  He described this training as a combination of classroom and military training: In the classroom, he was taught about Sharia law, prayer, Kifar (infidels), and the Muslim obligation to fight.  For the military training, the defendant explained that along with the other ISIS recruits, he received an AK-47 and learned how to assemble and shoot it.  He was also taught how to use the following weapons: PK Machine Gun, M-16s, and RPGs. Additionally, he explained that the military training covered ground tactics, such as how to move

through open areas and urban areas.  The defendant importantly also told FBI agents that as part of the training, the defendant pledged bayt (allegiance) to Abu Bakr Al-Baghdadi, the leader of ISIS, and to the ISIS organization, in front of an Iraqi ISIS member.

Following his training, the defendant received his own AK-47, four magazines for the weapon, a belt for the magazines, as well as two grenades.  The defendant believed the grenades to be Russian-made and shrapnel-creating.  He was then assigned to a number of different battalions traveling across Iraq and Syria.  During this time, the defendant communicated with his siblings in Kosovo on Viber and SureSpot, explaining that he was "in training" and located "in the Islamic State," thereby corroborating his statements to the FBI.  In these communications, the defendant also stated:  "Pray to Allah and hope to meet one day when the world will be free from infidels," and that "infidels are throwing bombs every day."

In the midst of these communications with his family in Kosovo, the defendant was eventually compensated by ISIS in Iraqi Dinar and transferred to the ISIS headquarters in Manbij, Syria.  This was around the time of the SDF's Manbij offensive[1] between May and August 2016.  In May 2016, the defendant reported for a ribat (guard) duty on the front line of the Manbij offensive.  By his own admissions, he brought his gun belt, AK-47, magazines, and grenades to take with him to ribat.  He also explained that he was in a cave with other ISIS recruits when a battle began with  SDF and U.S. Coalition forces.  He ran from the battle and was injured while running away, dropping some of his weaponry while fleeing.  The defendant did not admit to firing any of his weapons.

---

[1] This offensive was an SDF military operation to capture the city of Manbij from ISIS in the surrounding area through Al-BAB to the Manbij countryside.

After this battle, the defendant recovered from his injuries and was assigned to a number of other positions within ISIS before becoming a deserter whilst remaining under ISIS rule. As the SDF and Coalition forces closed in on ISIS's last strongholds, the defendant told the FBI that he turned himself and his family into SDF custody on February 27, 2019. Notably, this self-surrender occurred at the time SDF was conquering much of ISIS territory and permitting fighters to turn themselves in for incarceration.

The defendant was sent to SDF prison while his family was taken to an Internally Displaced Persons (IDP) camp. A few weeks later he was interviewed by the *New Yorker* magazine for an article titled "The Dangerous Dregs of ISIS." In this article, the defendant is named and admits to joining ISIS, but never engaging in battle. Specifically, he states:

"I shot about twenty bullets when I was doing the training in Mosul. And I shot one bullet in a house, by accident, in the ceiling. That's as much fighting as I did," Sulejmani insisted. "I carried the gun since the first day when I came to Dar al-Islamiyyah [House of Islam] until I left Baghouz. Towards the end it was rusted, but my goal wasn't to come fight. It was making hegira. I was pushed a certain way, which I went. I liked to give it a try. It just didn't work." He shrugged.

In his interview with the FBI, the agents showed the defendant this *New Yorker* article and the defendant largely confirmed his admissions, signing and dating each relevant page, and writing, "tru Statement."

The FBI, during the interview, also showed the defendant a video they secured before meeting with him.  This video taken during a Syrian wedding and showing ISIS members praying for the success of the Islamic state, pictures the defendant listening to an individual named Abu Muqatil al-Kosovi who is leading the pro-ISIS prayers.  The defendant identified himself in the video.



Following the defendant's interview with the FBI, he remained in SDF custody.  During this period he spoke to a number of other news sources, including CBS News and ABC News, identifying himself on video and by name, and explaining that he moved to the region to live under the rule of the Islamic State.2  Notably, in some of these interviews, he states that he never fired a shot in combat and simply traveled to live under the Islamic State.

---

2 Some of these statements can be located at the following links:

(1) https://www.cbsnews.com/news/isis-suspects-in-overcrowded-syria-prison-tell-cbs-news-theyre-american-sdf-says-needs-help-2019-09-17/

(2) https://abcnews.go.com/International/caliphate-wives-share-stories-year-isis-defeat-reporters/story?id=69055474

(3) https://www.npr.org/2019/12/08/786039731/visiting-imprisoned-isis-fighters

On July 7, 2020, a federal grand jury returned a three-count indictment against the defendant, charging him with the following: one count of Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B (Count 1); one count of Providing or Attempting to Provide Material Support or Resources to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B (Count 2); and one count of Receiving Military-Type Training from a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339D (Count 3). The indictment is attached as Exhibit 1 and fully incorporated by reference into this memorandum. The Court also issued a warrant for the defendant's arrest that day.

## ARGUMENT

I.   **The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community and a Substantial Risk of Flight.**

In light of the conduct in this case, the defendant's continued danger to the community, the defendant's lack of lawful employment, the defendant's lack of stable address, and the penalties the defendant faces, pretrial detention is necessary to ensure both the safety of the community and that the defendant does not flee to evade prosecution.

A.    **The nature and circumstances of the offense**

The nature and circumstances of the offense weigh in favor of detention for several reasons. The grand jury found probable cause to believe that the defendant committed Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Organization, Providing and Attempting to Provide Material Support or Resource to a Designated Foreign Terrorist Organization and Receiving Military-Training from a Foreign Terrorist Organization. Joining a designated foreign terrorist organization is an extremely serious offense. ISIS has long been, and remains, an enemy of the United States- an enemy that has murdered U.S. citizens overseas and

that has promoted and taken credit for lethal attacks in the United States.  Knowing this, the defendant provided a resource essential to ISIS: personnel for its army. The decision to join ISIS and travel half way around the world to pledge allegiance took deliberate planning and determination on the defendant's part.  Additionally, he brought his family, wife and his young kids, to live under ISIS rule. The defendant provided material support in the form of himself and provided services to a group that publicly boasted about violence, death, and terrorist acts.

The charges against the defendant expose him to a serious period of incarceration. Providing Material Support or Resources to a Designated Foreign Terrorist Organization (18 U.S.C. § 2339B) alone carries a maximum period of incarceration of 20 years. Receiving Military-Training from a Foreign Terrorist Organization carries a maximum period of incarceration of 10 years. Although the actual sentence imposed is likely to be less than the statutory maximums, the level of criminal exposure in this case creates a significant incentive for the defendant to flee. *See, e.g.*, *United States v. Anderson*, 382 F. Supp. 2d 13, 15 (D.D.C. 2005) (citing "maximum penalty of 23 years" in support of detention).  Moreover, under the U.S. Sentencing Guidelines, if convicted after trial on Count 1 *or* Count 2 of the Indictment, the defendant potentially faces a recommended sentence of 235 to 293 months' incarceration because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism.

### B.  <u>The weight of the evidence against the defendant</u>

The weight of the evidence against the defendant is strong.  The defendant has made multiple admissions about his support to ISIS.  First, the defendant proudly spoke to reporters about joining ISIS on multiple occasions and to numerous outlets.  Second, he voluntarily confessed to the FBI following a knowing *Miranda* waiver.  Third, he told his trusted family

members at the time of his training and moving around the Islamic states, that he was training there.

In addition to his own statements, there is corroborative evidence of the defendant's material support to ISIS.  As an initial matter, he was arrested in SDF custody following his capture.  Second, the government is in possession of, and provided to the defense, screenshots of his corroborative texts to his family.  Additionally, he is pictured in the aforementioned video with known ISIS members as an ISIS leader espouses violent rhetoric.  As such, the weight of the evidence favors detention.

### C.  <u>The history and characteristics of the defendant</u>

The history and characteristics of the defendant also weigh in favor of detention. The defendant long abandoned the United States:  He has not lived here nine years.  He handed over his U.S. passport, abandoning his U.S. citizenship, before joining ISIS.  He has no stable residence and knowingly brought his wife and young children into a war zone.  He is only in the United States now because he was taken from SDF custody to face his charges.  Given the severe penalties he faces if convicted at trial, the defendant is wholly incentivized to flee and to make himself unavailable for trial.

### D. <u>The nature and seriousness of the danger to any person or the community posed by the person's release</u>

The fourth factor–the nature and seriousness of the danger to any person or the community posed by the person's release–also strongly weighs in favor of detention.  The defendant's release poses a physical danger to the community. He has been indoctrinated to commit violence against the "infidels," including the United States.  He knowingly and willfully joined ISIS, trained in their weaponry, and battled U.S. Coalition Forces.

## CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The government also submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
for the District of Columbia

By:  _____/s/_____
Brenda J. Johnson, D.C. Bar No. 370737
Jessica Brooks CA Bar 238055
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7801 (Johnson)
(202) 272-7745 (Brooks)
Brenda.Johnson@usdoj.gov
Jessica.Brooks@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, a copy of the foregoing Memorandum was sent via email to counsel for the defendant.

_____/s/_____
Brenda J. Johnson
Assistant U.S. Attorney

11

Exhibit 1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term

### Grand Jury Sworn in on May 07, 2019

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Case No. 20-cr-106**<br>Assigned to: Magistrate Judge Deborah Robinson<br>Assign Date: 07/09/2020<br>Description: INDICTMENT (B) |
| v. | : | |
| | : | |
| | : | **18 U.S.C. § 2339B**<br>**(Conspiracy to Provide Material Support**<br>**or Resources to a Designated Foreign**<br>**Terrorist Organization)** |
| | : | |
| | : | |
| | : | |
| LIRIM SYLEJMANI, | : | **18 U.S.C. § 2339B**<br>**(Providing and Attempting to** |
| Also known as | : | **Provide Material Support or Resources to** |
| Abu Sulayman al-Kosovi, | : | **a Designated Foreign Terrorist** |
| | : | **Organization)** |
| | : | |
| | : | **18 U.S.C. § 2339D** |
| | : | **(Receiving Military-type Training** |
| Defendant. | : | **from a Foreign Terrorist** |
| | : | **Organization)** |

## I N D I C T M E N T

The Grand Jury charges that:

## COUNT ONE

At all times material to this Indictment:

1.    All of the acts referred to in this Indictment were begun and committed in Kosovo, Iraq,

Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States,

but within the extraterritorial jurisdiction of the United States, and, therefore pursuant to Title 18,

United States Code, Section 3238, within the venue of the United States District Court for the

District of Columbia.

U.S. District and Bankruptcy Courts
for the District of Columbia
A TRUE COPY
ANGELA D. CAESAR, Clerk

By_____
Deputy Clerk

2.      On October 15, 2004, the United States Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act (the "INA") and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224.  On May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under Section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name.  The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (i.e., "ISIS"— which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production.  In an audio recording publicly released on June 29, 2014, ISIS announced a formal change of its name to the Islamic State.  On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS.  To date, ISIS remains a designated FTO.

3.      Beginning at least in or about November 2015, and continuing through in or about February 2019, in Syria and elsewhere outside the United States, defendant SYLEJMANI, a United States citizen, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to unlawfully, willfully and knowingly provide, "material support and resources," as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel and services, to a foreign terrorist organization, namely, ISIS, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization, knowing that ISIS was a designated foreign terrorist organization, that ISIS engages and has engaged in terrorist activity, and that ISIS engages and has engaged in terrorism.

(**Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Organization**, in violation of Title 18, United States Code, Section 2339B)

## COUNT TWO

4.      The allegations set forth in paragraphs 1-2 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

5.      Beginning at least in or about November 2015, and continuing through in or about February 2019, in Syria and elsewhere outside the United States, defendant SYLEJMANI, a United States citizen, did unlawfully, willfully and knowingly provide and attempt to provide, "material support and resources," as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel and services, to a foreign terrorist organization, namely, ISIS, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization, knowing that ISIS was a designated foreign terrorist organization, that ISIS engages and has engaged in terrorist activity, and that ISIS engages and has engaged in terrorism.

(**Providing and Attempting to Provide Material Support or Resources to a Designated Foreign Terrorist Organization**, in violation of Title 18, United States Code, Section 2339B)

## COUNT THREE

6.      The allegations set forth in paragraphs 1-2 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

7.     Beginning at least in or about November 2015, and continuing through in or about February

2019, in Syria and elsewhere outside the United States, defendant SYLEJMANI, a United States

citizen, did unlawfully, willfully and knowingly receive military training from and on behalf of an

organization designated at the time of the training as a foreign terrorist organization- to wit, ISIS,

knowing that it is a designated terrorist organization, it has engaged and engages in terrorist

activity, and that it has engaged and engages in terrorism.

**(Receiving Military-Type Training from a Foreign Terrorist Organization**, in violation of
Title 18, United States Code, Section 2339D)

A TRUE BILL

FOREPERSON

*Michael R. Sherwin /SM*

Attorney of the United States in
and for the District of Columbia